UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURO IVAN GARCIA NAMBO,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, ET AL.,<br>Respondents. | Case No. 3:26-cv-11838<br>**ORDER GRANTING PETITIONER'S MOTION FOR AN EX PARTE TRO**<br>Re: Dkt. No. 3 |

Before the Court is Petitioner Mauro Ivan Garcia Nambo's ex parte application for a temporary restraining order ("TRO"), seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See* Dkt No. 4. The application for TRO was filed shortly after Petitioner filed a petition for writ of habeas corpus against Respondents. *See* Dkt. No. 1. For the following reasons, the application is GRANTED.

## I. BACKGROUND

Petitioner was born in Mexico on September 27, 1981. Pet. (Dkt. No. 1) at 8. He came to the United States as a teenager and graduated from high school in Santa Rosa, California. Garcia Nambo Decl. (Dkt. No. 3-2) ¶ 5. He was removed in 2006 and has lived in the United States for more than ten years since his last entry. Pet. at 4, 13. He lives in Forestville with Ms. Villalva Santos, a United States citizen who has lived in this country since 1992; they have been together seven years. Villalva Santos Decl. ¶ 1; Pet. at 5, 7. He works for a towing company and waits for calls in a particular Santa Rosa parking lot. Garcia Nambo Decl. ¶ 2. His daughter, Carmen Priscilla Garcia Silva, is eighteen and a United States citizen; he supported her throughout her childhood and still gives her money when he can. *Id.* ¶ 4. He suffers from asthma, anxiety, and

claustrophobia, takes medication for anxiety, and is now without that medication. *Id.* ¶ 2; Pet. at 5. He fears return to Mexico because of the cartels. Garcia Nambo Decl. ¶ 5.

At about 9:20 or 9:30 a.m. on October 13, 2026, Petitioner was sitting in his car in a parking lot in Santa Rosa, the spot where he usually waits for towing calls. Garcia Nambo Decl. ¶ 2; Pet. at 8. Three cars pulled up and surrounded his car. About six masked officers wearing vests marked "POLICE ICE" got out, drew their guns, and told him to get out and show his hands. Garcia Nambo Decl. ¶ 2. They did not say they were police or identify themselves, did not say he was under arrest, and did not say why. *Id.* ¶¶ 2-3; Pet. at 8-9. They did not ask him for identification or any document. Pet. at 9. An officer opened the driver's door, took him out, and handcuffed him with his hands behind his back; only then did the officers lower their guns. Garcia Nambo Decl. ¶ 2. He asked them to loosen the handcuffs, which hurt his wrist; they said they could change them later. *Id.* They searched his car and his belongings without asking him anything. *Id.* He had a panic attack and could not breathe properly; once in the officers' car, handcuffed, he felt claustrophobic. *Id.* ¶¶ 2-3. They did not read him his rights. *Id.* ¶ 3. They took him to San Francisco. Pet. at 9.

At 630 Sansome Street, Respondents gave Petitioner one document: a Notice of Intent/Decision to Reinstate Prior Order (Form I-871) dated October 13, 2026. Dkt. No. 1-4 at 2; Sullivan Decl. ¶ 2. The form states that Petitioner was removed on May 3, 2006, under an order entered at Eloy, Arizona, and that he reentered the United States on an "Unknown Date" at an "Unknown Place." Dkt. No. 1-4 at 2. Its notice section is signed by a deportation officer; its acknowledgment section records that Petitioner refused to sign and is dated October 13, 2026; and its "Decision, Order, and Officer's Certification" is dated October 13, 2026, at San Francisco, California, and signed by Michael Taylor, SDDO. *Id.* The form tells Petitioner that he does "not have a right to a hearing before an immigration judge." *Id.* Petitioner was arrested in Santa Rosa and received the form only after he arrived in San Francisco. Sullivan Decl. ¶ 2; Pet. at 4, 9. The Petition alleges that the reinstatement order was issued after the arrest. Pet. at 4, 9. At the time the petition was filed, Respondents had produced no warrant of arrest, no warrant of removal, and

no other document. Pet. at 5, 9-10. Petitioner remains held at the ICE office at 630 Sansome Street. Pet. at 2.

Petitioner filed his habeas petition, as well as the instant motion for an ex parte TRO on October 13, 2026. Dkt. No. 3. The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to the United States Attorney's Office for this District. Bedolla Mejia Decl. (Dkt. No. 3-1) ¶ 3. In the motion, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, the Fourth Amendment for arrest without a warrant and arrest without probable cause, and Title 8 U.S.C. § 1357(a)(2).

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.' " *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

The requirements for issuing a TRO without notice are met here. *See* Fed. R. Civ. P. 65(b)(1). Petitioner's counsel has set out specific facts in a declaration showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A). Additionally, counsel states that she contacted the

Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on October 13, 2026, and provided a copy of Petitioner's habeas petition by email on October 13, 2026. *See* Bedolla Mejia Decl. ¶ 3; *see also* Fed. R. Civ. P. 65(b)(1)(B).

Next, all four *Winter* factors weigh in favor of granting a TRO.

First, Petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Due Process Clause typically "requires some kind of a hearing before the State deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Immigration detention requires a showing of exigent circumstances. Respondents detained Petitioner while he was waiting in a vehicle for work, and they offered no evidence on the record that Petitioner is a flight risk or a danger to the community. These circumstances warrant issuance of a TRO. *See Ayala v. Albarran*, 2026 WL 1179862, at *4 (N.D. Cal. Apr. 30, 2026).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried his burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-

01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Lastly, the Court determines that a security is not necessary. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from this TRO, issuance without a security is appropriate.

//

//

**IV. ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. Respondents are ENJOINED from removing Petitioner from this judicial district, and, if they have already transferred him, are ORDERED to return him to this judicial district. Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents shall provide a status report confirming Petitioner's release by 10:00 a.m. on October 14, 2026.

(5) Respondents are ORDERED TO SHOW CAUSE at a hearing in the courtroom of the assigned judge, or as otherwise ordered by that judge, at 10:00 a.m. on October 22, 2026, why a preliminary injunction should not issue. Respondents may file a written response no later than October 19, 2026, and Petitioner may file a reply by no later than noon on October 21, 2026. The assigned judge may modify this schedule as appropriate.

(5) This Order shall remain in effect until 6:55 a.m. on October 28, 2026, or as otherwise directed by the Court.

**IT IS SO ORDERED.**

Dated: October 14, 2026, at 6:55 a.m.

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**