United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MAURO IVAN GARCIA NAMBO,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-11838-BLF

**ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTION FOR RECONSIDERATION**

[Re: ECF Nos. 1, 6]

Before the Court is Petitioner's motion for preliminary injunction and Respondents' motion to reconsider the Court's issuance of a temporary restraining order ("TRO"). *See* ECF Nos. 1 ("Pet."), 4 ("Order"), 6 ("Mot."). The parties appeared for a hearing on October 27, 2026. *See* ECF No. 18. For the following reasons, the Court GRANTS a preliminary injunction in Petitioner's favor and DENIES Respondents' motion for reconsideration.

## I. BACKGROUND

Petitioner is a Mexican citizen. Pet. ¶ 19. He came to the United States as a teenager and graduated from high school here. Pet. ¶ 10. Petitioner was removed from the United States in 2006. Pet. ¶ 10. He reentered the country at least ten years ago and has resided here since. *See* Pet. ¶ 23.

On October 13, 2026, Petitioner was arrested at gunpoint by ICE. Pet. ¶ 25. He was taken to the local ICE detention center. Pet. ¶ 26. There, Petitioner was shown a notice reinstating his prior removal order. Pet. ¶ 26. The signature on the notice postdated his arrest. Pet. ¶ 26; ECF No. 1-4 at 2.

Later that day, Petitioner filed a habeas petition. *See* ECF No. 1. He also filed a request for a TRO. *See* ECF No. 3. The next day, the Court granted the TRO and ordered Respondents to show cause why a preliminary injunction should not issue. *See* ECF No. 4. That same day, Respondents

United States District Court
Northern District of California

moved to dissolve the TRO. *See* ECF Nos. 6. On October 27, 2026, the parties appeared for a show cause and dissolution hearing. *See* ECF No. 18.

## II. LEGAL STANDARD

### A. Preliminary Injunction

"Courts consider four factors in deciding whether to grant a preliminary injunction: the plaintiff's likelihood of success on the merits; her likelihood of suffering irreparable harm in the absence of preliminary relief; whether the balance of equities tips in her favor; and whether an injunction is in the public interest." *Garcia v. City of Los Angeles*, 11 F.4th 1113, 1118 (9th Cir. 2021) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### B. Fed. R. Civ. P. 65(b)(4)

Upon issuance of a TRO, "the adverse party may appear and move to dissolve or modify the order." Fed. R. Civ. P. 65(b)(4). "The court must then hear and decide the motion as promptly as justice requires." *Id.*

## III. DISCUSSION

### A. Preliminary Injunction

The Court considers the four *Winter* factors in turn.

#### 1. Likelihood of Success

The Court first assesses the likelihood that Petitioner succeeds on his procedural due process claim.[1] The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews* factors. *See Mathews v. Eldrige*, 424 U.S. 319, 335 (1976). Petitioner contends that the procedure by which he was detained was constitutionally infirm because the notice reinstating his removal order postdated his arrest. *See* Pet. ¶¶ 38–40. "It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. Sept. 7, 2023).

---

[1] The procedural due process claim is dispositive, so the Court need not address the other claims.

The Court finds that Petitioner has shown that he has a constitutionally protected liberty interest. Petitioner has lived in this country for over a decade, has a long work history, and has a partner and daughter who are both citizens. Pet. ¶¶ 2, 9–10, 19. Respondents contend that "Petitioner surely cannot obtain a liberty interest through his successful evasion of immigration enforcement and commission of a federal crime." Mot. at 10. But "the Due Process Clause applies to all 'persons' within the United States, ***including aliens***, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, (2001) (emphasis added).

The next question is what process, if any, is due. In making that determination, the Court weighs the *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335.

The Court addresses the three factors in turn.

***First***, the private interest at stake—liberty—is an interest of the utmost importance. As previously discussed, Petitioner has lived in this country for over a decade. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

***Second***, there is a significant risk that the government will erroneously deprive Petitioner of his protected liberty interest absent the procedural safeguards set forth in 8 C.F.R. § 241.8(b). "Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). "[W]hen an alien [has already been] ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (i.e., the "removal period"). 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during this removal period. *See* 8 U.S.C. § 1231(a)(2)(A).

"DHS's regulations set out the process for reinstating an order of removal." *Johnson*, 594 U.S. at 529. "An alien who illegally reenters the United States after having been removed . . . shall

United States District Court
Northern District of California

be removed from the United States by reinstating the prior order." 8 C.F.R. § 241.8(a). "The alien has no right to a hearing . . . in such circumstances." 8 C.F.R. § 241.8(a). But "[i]f an officer determines that an alien is subject to removal under this section, he or she shall provide the alien with written notice of his or her determination. The officer shall advise the alien that he or she may make a written or oral statement contesting the determination. If the alien wishes to make such a statement, the officer shall allow the alien to do so and shall consider whether the alien's statement warrants reconsideration of the determination." 8 CFR. § 241.8(b). Simply put, under DHS regulations, an alien subject to a reinstated order of removal has no right to a hearing but is entitled to written notice and the right to contest the applicability of § 241.8(a).

Detention follows reinstatement. Not the other way around. The Supreme Court has made this clear. *See Johnson*, 594 U.S. at 529 ("[T]he agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and ***then reinstates the order***." (citing 8 CFR §§ 241.8(a)–(c), 1241.8(a)–(c)) (emphases added)). "Absent such safeguards, ICE would be able to detain noncitizens under § 1231 'with no process at all, much less prior notice.'" *Cartagena Jaco v. Blanche*, 2026 WL 1786007, at *3 (S.D.N.Y. June 22, 2026) (quoting *Valdez v. Joyce*, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025)).

Respondents' failure to follow regulatory requirements is dispositive here. "[T]he fact that no reinstatement had been issued before [Petitioner's] arrest renders the purported basis for his arrest and detention invalid." *Cartagena Jaco*, 2026 WL 1786007, at *4; *see also De La Rosa Izaguirre v. Blanche*, 2026 WL 2023200, at *11 (E.D.N.Y. July 13, 2026). "[T]he procedures set out in § 241.8 serve as the procedural floor below which the government may not go." *Cartagena Jaco*, 2026 WL 1786007, at *3 (S.D.N.Y. June 22, 2026) (citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). Failing to follow these regulatory procedures "not only contravenes agency regulation but also violates due process." *Id.* Hence, the risk of erroneous deprivation looms large.

Respondents' authorities do not tip the scales the other way. *See* Mot. at 1 (citing *Gaytan v. Chestnut*, 2026 WL 1954501 (E.D. Cal. July 6, 2026); ECF No. 11-1 (citing *Aguilar v. Albarran*, 2026 WL 3085458, at *1 (N.D. Cal. Oct. 15, 2026)). The petitioner in *Gaytan*, for one, did not even

"address [the] reinstated order of removal," much less allege that the reinstatement postdated his detention. *See* 2026 WL 1954501, at *3. And in *Aguilar*, not only was "[t]he record [] void of any mention of what *time* [the notice of reinstatement] was issued," but the Court did not analyze whether the notice of reinstatement postdated the petitioner's detention. *See* 2026 WL 3085458, at *1 (original emphasis). Here, in contrast, it is uncontroverted that "[t]he reinstatement order . . . was signed . . . hours after Petitioner had been seized . . . ." *See* Opp. at 6 (citing ECF Nos. 1-4 at 2, 1-3 ¶ 2).

***Third***, the additional procedure constitutionally demanded here is neither procedurally burdensome nor costly. Respondents need only follow their own regulations.

Having determined that Petitioner has a protected liberty interest and that all three *Mathews* factors cut in favor of Petitioner, the Court concludes that Petitioner has shown that he is likely to succeed on his procedural due process claim. The first *Winter* factor cuts in Petitioner's favor.

**2. Irreparable Harm**

The Court finds that Petitioner has shown a likelihood of irreparable harm. As discussed previously, Petitioner has shown that he is likely to succeed on his procedural due process claim. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017).

**3. Equities and Public Interest**

Where, as here, "the nonmovant is the government, the last two *Winter* factors merge." *Baird*, 81 F.4th at 1040 (cleaned up). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Because Petitioner is likely to succeed on his procedural due process claim, the Court finds that the balance of equities cut in his favor and that preliminary relief serves the public interest.

* * *

For the foregoing reasons, the court ISSUES a preliminary injunction enjoining Respondents from detaining Petitioner until they have followed the regulatory procedural requirements.[2]

**B. Reconsideration**

The standard for issuing a preliminary injunction is "substantially identical" to the standard for issuing a TRO. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). For the same reasons the Court finds a preliminary injunction proper, the Court DENIES the motion for reconsideration of the TRO. In any event, disposition of the TRO is mooted by the issuance of this preliminary injunction.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's motion for preliminary injunction is GRANTED.

(2) Respondents are ENJOINED from detaining Petitioner without complying with the procedural process set forth in 8 CFR. § 241.8.

(3) This preliminary injunction shall remain in force during the pendency of this case or until modified by the Court.

(4) The motion for reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: October 30, 2026

BETH LABSON FREEMAN
United States District Judge

[2] The Court briefly addresses whether release is the proper remedy. It is. To the extent Respondents invoke *Aguilar* for the proposition that suppression of evidence is the proper remedy—not release—(1) the *Aguilar* court's comments regarding the suppression remedy were made in the context of evaluating a Fourth Amendment claim (not a procedural due process claim); and (2) there, unlike here, the court expressly qualified its conclusion on grounds that the petitioner failed to carry his burden of rebutting the respondents' authorities. *See Aguilar*, 2026 WL 3085458, at *1 ("Although the Court might reach a different interpretation of the law with more developed briefing, it declines to do so here.").



United States District Court
Northern District of California