United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MAURO IVAN GARCIA NAMBO,

Plaintiff,

v.

SERGIO ALBARRAN, et al.,

Defendants.

Case No. 26-cv-11838-BLF

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ENTERING PERMANENT INJUNCTION; JUDGMENT**

Before the Court is Petitioner's petition for writ of habeas corpus. *See* ECF Nos. 1 ("Pet."), 22 ("Return"), 23 ("Traverse"). For the following reasons, the Court GRANTS the petition and enters a permanent injunction in Petitioner's favor.

## I. BACKGROUND

Petitioner is a Mexican citizen. Pet. ¶ 19. He came to the United States as a teenager and graduated from high school here. Pet. ¶ 10. Petitioner was removed from the United States in 2006. Pet. ¶ 10. That removal occurred pursuant to a removal order. Petitioner reentered the country at least ten years ago and has lived here since. *See* Pet. ¶ 23.

On October 13, 2026, Petitioner was arrested and detained by ICE. Pet. ¶ 25–26. While in detention, Petitioner was shown a notice reinstating his prior removal order. Pet. ¶ 26. It is uncontroverted that the reinstatement postdated Petitioner's detention. *See* Pet. ¶ 26; ECF No. 1-4 at 2.

That same day, Petitioner filed a habeas petition. *See* ECF No. 1. He also filed a request for a TRO. *See* ECF No. 3. The next day, the Court granted the TRO and ordered Respondents to show cause why a preliminary injunction should not issue. *See* ECF No. 4. Hours later, Respondents moved to dissolve the TRO. *See* ECF Nos. 6. On October 27, 2026, the parties appeared for a show

cause and dissolution hearing. *See* ECF No. 18. Three days later, the Court granted Petitioner's request for a preliminary injunction and denied the government's motion to reconsider the Court's issuance of the TRO. *See* ECF No. 21. Following the Court's order, the parties filed additional briefing on the habeas petition. *See* ECF Nos. 22, 23. The petition is now ripe.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

Respondents challenge the Court's jurisdiction on two independent grounds. The Court addresses each in turn.

***First***, Respondents contend that the petition is moot because Petitioner has been released from custody. *See* Return at 4–5. A habeas petition presents a live controversy post-release only where there remains a redressable "collateral consequence." Return at 4–5 (quoting *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007)). And here, the argument continues, there is no "collateral consequence" because Petitioner has procured the relief he sought: release. *See* Return at 5. Moreover, Respondents argue that Petitioner's request for a hearing has no effect on the collateral consequence analysis because it was framed as "***alternative*** relief." Return at 5 (emphasis added).

Petitioner responds that there is a live controversy for three reasons: (1) Petitioner is in constructive custody because he is subject to ICE supervision; (2) Petitioner is at risk of unlawful

United States District Court
Northern District of California

re-detention; and (3) Petitioner's requests for declaratory judgment and specific procedural protections remain pending. *See* Traverse at 3–4.

The Court holds that the petition presents a live controversy because Petitioner faces an imminent threat of re-detention absent relief. *See Nielsen v. Preap*, 586 U.S. 392 (2019) ("Unless that preliminary injunction was made permanent and was not disturbed on appeal, these individuals faced the threat of re-arrest and mandatory detention."). Moreover, Petitioner is still constructively "in custody" because he is subject to ICE supervision. *See* ECF Nos. 16-2, 16-4; *Maleng v. Cook*, 490 U.S. 488, 492 (1989) ("[W]e have very liberally construed the 'in custody' requirement for purposes of federal habeas . . . ."); *see also Harrington v. Albarran*, 841 F. Supp. 3d 620, 628 (N.D. Cal. 2026) (collecting cases).

***Second***, Respondents contend that the Court lacks jurisdiction to invalidate the reinstated removal order. *See* Return at 5–7. Further, Respondents contend that "this Court decided to sua sponte invalidate [the reinstated removal order] anyway, byu [sic] requiring ICE to comply with regulations prior to reinstating the removal order." Return at 6–7.

This argument is borderline frivolous. Respondents characterize the Court as having "invalidate[d]" the reinstated removal order. Return at 6 (citing ECF No. 21 at 6). The Court did nothing of the sort. The preliminary relief issued in this case related only to detention. *See* ECF No. 21 at 6 ("[T]he court ISSUES a preliminary injunction enjoining Respondents from ***detaining*** Petitioner until they have followed the regulatory procedural requirements. . . . Respondents are ENJOINED from ***detaining*** Petitioner without complying with the procedural processes set forth in 8 CFR § 241.8." (emphases added)). The Court did not "invalidate" the reinstated removal order. *See also* Traverse at 4–5. Whether detention passes constitutional muster is a different issue altogether that the Court has jurisdiction to decide.

* * *

For the foregoing reasons, the Court holds that it maintains jurisdiction over this habeas action.

**B. Procedural Due Process**

The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews* factors. *See Mathews v. Eldrige*, 424 U.S. 319, 335 (1976). Petitioner contends that the procedure by which he was detained was constitutionally infirm because the notice reinstating his removal order postdated his arrest. *See* Pet. ¶¶ 38–40. This sequence of events is uncontroverted. *See, e.g.*, Return at 22. ("[E]ven if the arrest occurred prior to the removal order being reinstated, Petitioner is now subject to mandatory detention.").

To start, the Court finds that Petitioner has shown that he has a constitutionally protected liberty interest. Petitioner has lived in this country for over a decade, has a long work history, and has a partner and daughter who are both citizens. Pet. ¶¶ 2, 9–10, 19; *Garcia Nambo v. Albarran*, 2026 WL 3270015, at *2 (N.D. Cal. Oct. 30, 2026).

The next question is what process, if any, is due. In making that determination, the Court weighs the *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews*, 424 U.S. at 335.

The Court addresses the three factors in turn.

***First***, the private interest at stake—liberty—is an interest of the utmost importance. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner's presence in the country spanning the last decade has no doubt given rise to a constitutionally protected liberty interest.

***Second***, there is a significant risk that the government will erroneously deprive Petitioner of his protected liberty interest absent the procedural safeguards set forth in 8 C.F.R. § 241.8(b).

"[U]nder DHS regulations, an alien subject to a reinstated order of removal has no right to a hearing but is entitled to written notice and the right to contest the applicability of § 241.8(a)." *Garcia Nambo*, 2026 WL 3270015, at *2. The plain text of the regulations and the decisions interpreting them leave no ambiguity as to the order in which these procedures are to occur. "[T]he agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and ***then reinstates the order***." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing 8 CFR §§ 241.8(a)–(c), 1241.8(a)–(c)) (emphases added). These procedures "serve as the procedural floor below which the government may not go." *Cartagena Jaco v. Blanche*, 2026 WL 1786007, at *3 (S.D.N.Y. June 22, 2026) (citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). And failing to follow these regulatory procedures "not only contravenes agency regulation but also violates due process." *Id.*

"Detention follows reinstatement. Not the other way around." *Garcia Nambo*, 2026 WL 3270015, at *2. Here, "the fact that no reinstatement had been issued before [Petitioner's] arrest renders the purported basis for his arrest and detention invalid." *Cartagena Jaco*, 2026 WL 1786007, at *4; *see also De La Rosa Izaguirre v. Blanche*, 2026 WL 2023200, at *11 (E.D.N.Y. July 13, 2026). In resisting, Respondents recycle the same arguments and marshal the same caselaw as when they opposed preliminary relief, but the Court has already rejected those arguments. *See Garcia Nambo*, 2026 WL 3270015, at *2–4.

Respondents ask for carte blanche discretion to detain anyone and everyone with virtually no procedural safeguards. The practical upshot of Respondents' maximalist position is clear: "ICE would be able to detain noncitizens under § 1231 'with no process at all, much less prior notice.'" *Cartagena Jaco*, 2026 WL 1786007, at *3 (quoting *Valdez v. Joyce*, 803 F. Supp. 3d 213, 219 (S.D.N.Y. 2025)). Due process tolerates no such thing.

***Third***, "the additional procedure constitutionally demanded here is neither procedurally burdensome nor costly. Respondents need only follow their own regulations." *Garcia Nambo*, 2026 WL 3270015, at *3. Tellingly, Respondents' brief gives these regulations short shrift—so short, in fact, that it appears Respondents would rather these regulations not exist. *See* Return at 3

("Regulations set out the process for reinstating an order of removal." (citing 8 C.F.R. §§ 241.8(a)–(c))). But these regulations do exist. And due process compels adherence thereto.

In sum, Petitioner has demonstrated that he has a protected liberty interest and that all three *Mathews* factors cut in his favor.

**C. Fourth Amendment**

Respondents do not present any argument in opposition to Petitioner's Fourth Amendment claims. *See generally* ECF No. 22. These claims are deemed unopposed and supply an independently sufficient basis for granting habeas relief. *See, e.g.*, *Goldberg v. TeachBK, Inc.*, 2026 WL 2098718, at *3 (N.D. Cal. July 21, 2026) (deeming arguments waived when not raised in opposition).

**D. Permanent Injunction**

A permanent injunction enjoining Respondents from detaining Petitioner until they have followed the regulatory procedural requirements is proper. Irreparable harm will accrue otherwise. *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) ("[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury."). And injunctive relief serves the public interest here. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Moreover, requiring the Respondents to move to lift the injunction is also appropriate because Petitioner shows a clear pattern of re-detention without sufficient process by Respondents, demonstrating a high likelihood of continuing constitutional harm should the Court require otherwise.

Petitioner additionally asks the Court to require a pre-deprivation hearing before the Court to "evaluate compliance before any re-detention." Return at 23. That request is premature and asks the Court to resolve questions not before it. The Court need not decide at this juncture whether due process demands more than the governing regulations provide.

**E. Tolling**

Respondents lastly ask the Court to "toll the 90-day removal period for as long as Petitioner has been released pursuant to this Court's release order." Return at 9. This request is denied.

Respondents' problem is of their own making. Having failed to comply with the regulatory procedures governing reinstatement, Respondents cannot now be heard to complain.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

a. The petition for writ of habeas corpus is GRANTED.

b. Respondents are PERMANENTLY ENJOINED AND RESTRAINED from re-detaining Petitioner without complying with the procedural process set forth in 8 CFR. § 241.8.

c. This permanent injunction shall remain in force until modified by the Court.

d. The request by Respondents for Petitioner to report for custody is DENIED.

e. Judgment is entered in favor of Petitioner.

f. The Clerk of the Court SHALL close the case.

**IT IS SO ORDERED.**

Dated: November 23, 2026

BETH LABSON FREEMAN
United States District Judge